PUBLISH

F I L E D
United States Court of Appeals
Tenth Circuit

APR 23 2004

PATRICK FISHER
Clerk

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

SHIRLEY J. BONES,

      Plaintiff - Appellant,

v.

HONEYWELL INTERNATIONAL, INC., formerly known as AlliedSignal, Inc.,

      Defendant - Appellee.

No. 02-3378

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 00-CV-4129-SAC)**

---

David O. Alegria, McCullough, Wareheim & LaBunker, P.A., Topeka, Kansas, for Plaintiff - Appellant.

J. Nick Badgerow (Katherine A. Hansen with him on the brief), Spencer, Fane, Britt & Browne, LLP, Overland Park, Kansas, for Defendant - Appellee.

---

Before **MURPHY**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    INTRODUCTION

Plaintiff-appellant Shirley J. Bones, who suffers from tendinitis, worked for defendant-appellee Honeywell International, Inc., and its predecessor since 1986. In July 1999, Bones was notified that Honeywell deemed her to have voluntarily terminated her employment because she neither reported to work nor notified her supervisor or team of her absences on three consecutive working days, in violation of company policy. Bones filed for workers' compensation six months after her termination from Honeywell.

Bones filed complaints with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC"), which gave her a Notice of Suit Rights. Bones then sued Honeywell in the United States District Court for the District of Kansas, alleging violations of the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and Kansas state law.

Honeywell moved for summary judgment on all claims. The district court granted Honeywell's motion for summary judgment, concluding, in relevant part, that: 1) Bones did not establish a *prima facie* case of retaliatory discharge in violation of Kansas state law; 2) Bones' violation of Honeywell's attendance policy was a legitimate, non-retaliatory reason for Bones' discharge; 3) Bones did not provide the proper notice for leave under the FMLA; 4) Honeywell would

have dismissed Bones regardless of her request for an FMLA leave because she failed to comply with its notification of absence policy; 5) Bones is not disabled within the meaning of the ADA; 6) Bones did not establish a *prima facie* case of retaliation under the ADA; and 7) Bones' violation of Honeywell's attendance policy was a legitimate, non-retaliatory reason for Bones' termination, and such a reason was not pretext for retaliation in violation of the ADA. Bones appeals.

Exercising jurisdiction pursuant 28 U.S.C. § 1291, this court **affirms** the district court's grant of summary judgment to Honeywell.

## II. BACKGROUND

Bones developed tendinitis in her elbow in 1989 after injuring it while throwing and stacking wood at home. Bones informed appellee of her elbow injury shortly thereafter, noting that it was not work-related.

In June 1997, Bones saw her personal physician, Dr. Severa, for a tendinitis flare-up and received a medical note enumerating restrictions with which Honeywell complied. Bones testified that she informed her then-supervisor, David McFadden, that she believed her injury was work-related. On July 2, 1997, Bones requested "work comp papers" from Honeywell's medical department. Bones testified that she told the nurse, Robin Thompson, that she suffered from a work-related injury. Thompson, however, testified that Bones never told her that her elbow injuries were work-related. Thompson gave Bones the workers'

compensation handbook and explained the differences between workers' compensation and private insurance. Thompson never directed Bones to forego any remedies under the workers' compensation act. Bones indicated that she would "think about" filing a workers' compensation claim or staying with her primary care provider, but did not file a workers' compensation claim during her employment with Honeywell. Honeywell's in-house physician, Dr. Steelman, also evaluated Bones in July 1997, and his notes indicate that her elbow condition was non-occupational. Steelman recommended accommodations for Bones' elbow condition with which McFadden complied.

Bones was granted several short-term disability leaves for elbow-related reasons at various times throughout 1997 and 1998. Each time she requested sick leave prior to July 1999, Bones advised her supervisor that she was going to be off work. Bones admitted in her deposition, however, that she also had a large number of unexcused absences during the 1990s and was warned by McFadden that her tardiness was unsatisfactory and that she could be terminated for it.

Honeywell accommodated Bones' elbow restrictions by moving her to a file clerk position in customer service and then to a position in subassembly. In addition, Dr. Steelman evaluated Bones' workstation and recommended modifications which were made to accommodate Bones' elbow problems. The subassembly position was under Shawn Reniker's supervision. Reniker testified

that he knew that Bones had work restrictions but did not know about any alleged work-related injury. Neither the medical department nor McFadden told Reniker that Bones' restrictions were related to a workers' compensation claim.

Bones went on a medical leave of absence from September 2, 1998, until October 11, 1998, and notified her supervisor of that fact. Bones did not return to work on the date her leave expired. Consequently, Honeywell sent her a notice letter on October 21, 1998, stating that according to company policy, three consecutive days of absence without notice is considered voluntary termination, and that Bones would be terminated if she did not return to work or notify Reniker of the reason for her absence. Bones denies having received this letter but admits that Reniker told her it had been sent. Upon returning to work, Bones informed Reniker that she had called in her absences. Reniker testified that Bones was allowed to retain her job because "[there] was a mix-up," as Reniker had not realized that she had called in her absences.

In January 1999, Bones began working as a material handler under Reniker's supervision. Bones was able to perform all the functions of the material handler position except the heavy lifting, which other employees did for her upon her request. Bones admitted that she did not recall telling Reniker that her elbow injury happened at work. Bones also admitted that she never told Reniker that she filed or was going to file a workers' compensation claim.

Bones took vacation and personal days on July 19, 20, and 21, 1999. She called in those absences by reporting them to a co-worker, Judy Fuller, but did not mention any work injury. Bones went to see Dr. Severa on July 22, 1999, because of elbow and stress problems. She neither went to work nor called in her absence that day. Likewise, Bones neither reported to work nor called in her absences on Friday, July 23 or Monday, July 26, 1999. Bones' boyfriend Todd Roe, however, delivered a medical leave of absence request from Bones to Honeywell's medical department on Friday, July 23. Roe simply handed in the forms and did not tell anyone in the medical department that Bones' leave request was for a work-related injury. The medical leave request was completed by Dr. Severa and indicated that he had seen her on July 22 and that she was unable to work from July 18, 1999, until August 16, 1999. Bones' medical leave request was not processed, however, until Thursday, July 29, because of the medical department's practice of processing medical leave requests only on Thursdays.

Bones was notified by letter dated Tuesday, July 27, 1999, that she was deemed to have voluntarily terminated her employment because she neither reported to work nor notified her supervisor or team about her absences on July 22, 23, and 26. The decision to terminate her employment was made on July 27 by Reniker and Honeywell's Human Resources Manager, April van Rensburg. Nurse Thompson, Dr. Steelman and others in the medical department did not

participate in the decision to terminate Bones. Reniker and van Rensburg testified that they terminated Bones because she did not show up to work for three consecutive days and did not notify her supervisor of those absences, in violation of Honeywell policy. The district court concluded that at the time of the decision to terminate Bones, neither Reniker nor van Rensburg knew [1] that Bones had applied for a medical leave of absence, had an alleged work-related injury, or could have potentially filed for workers' compensation. Evidence in the record supports this conclusion.

---

[1]Bones argues, however, that Reniker knew, prior to firing her, that she had an arm injury and that her arm injury was caused by her work. Bones' relevant testimony, however, merely states that "[Reniker] knew I had surgery and that it bothered me to do the repetitious work." Bones also testified that she did *not* specifically recall telling Reniker that the injury to her elbow happened at work. Consistently, Reniker testified that he only knew that Bones was subject to work-place restrictions but did not know, prior to firing her, that her restrictions were due to a work-related injury or related to a potential workers' compensation claim. Reniker had no access to the information Bones provided to Honeywell's medical department unless it was specifically communicated to him by that department. Evidence shows that the medical department did not communicate with Reniker or van Rensburg, prior to July 30, about the reason for Bones' absences from work on July 22, 23, and 26 of 1999. In addition, there is no evidence that either Reniker or van Rensburg knew that these absences were due to a work-related injury or a potential worker's compensation claim. Reniker testified that Bones had historically been absent from work for a variety of reasons, and he could not have known, unless specifically told, whether a particular unexcused absence was due to medical problems. Given this evidentiary basis, the district court did not err in concluding that Reniker and van Rensburg did not know that Bones had applied for a medical leave or had a work-related injury when they terminated her employment.

Bones admits that she understood that absence from work for three consecutive working days without notice is grounds for termination. Bones claims, however, that she was unaware that it was mandatory for her to notify her department or supervisor in addition to submitting a request for a medical leave of absence to the medical department. Honeywell's medical leave of absence procedure forms explicitly provided: "[y]ou must follow the 'call-in policy' for your department. **Health Services will not call your manager for you       **." (emphasis in original). Bones admitted that she received this form at least one or more times when she requested sick leaves prior to July 1999. In addition, the human resources department "in all circumstances . . . told associates that it was their responsibility and their accountability to notify their supervisor [about absences due to a pending medical leave request, and] that medical would not do that."

The call-in policy for Bones' department at the relevant time was to notify Reniker of any absences. Bones testified, however, that she had been told by Reniker that if she needed to be off work for a medical condition, she was to "deal with the medical department and the medical department would communicate with him." Consistently, Reniker testified that he trained Bones to deal with the medical department if she needed a medical leave. In addition,

however, Reniker specifically communicated to Bones that it was her responsibility to call *him* if she was going to be absent from work.

## III.  DISCUSSION

This court reviews a district court's grant of summary judgment *de novo*. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 527 (10th Cir. 1994). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Cone*, 14 F.3d at 528.  There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).  Unsubstantiated allegations carry no probative weight in summary judgment proceedings.  *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992).  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.  *See Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999); *Allen v. Muskogee*, 119 F.3d 837, 846 (10th Cir. 1997).  Furthermore, this court may affirm a grant of summary judgment on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result.  *Cone*, 14 F.3d at 528.

***Kansas State Law Claim***

The district court correctly granted summary judgment to Honeywell on Bones' state law claim. In order to establish a claim of retaliatory discharge under Kansas law, a plaintiff must prove that: (1) she filed a claim for workers' compensation benefits or sustained an injury for which she might assert a future claim for benefits; (2) defendants had knowledge of her workers' compensation claim or of her sustaining a work-related injury for which she might file a future claim for benefits; (3) defendants terminated her employment; and (4) a causal connection exists between her termination and her protected activity or injury. *See Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002); *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1298 (10th Cir. 1998).

The district court did not err in granting Honeywell summary judgment on Bones' state law retaliation claim because, even assuming, *arguendo*, that Bones could prove the other elements of a *prima facie* case, she has failed to produce evidence from which a reasonable jury could infer a causal connection between her termination and her potential filing of a workers' compensation claim. To establish the requisite causal connection, a plaintiff must prove an unlawful intent on the part of the employer to terminate her *because* she had filed a workers' compensation claim or had sustained a work-related injury for which she might file such a claim. *See Bausman v. Interstate Brands Corp*., 252 F.3d 1111, 1116

-10-

(10th Cir. 2001). The mere act of firing an injured employee for excessive absences or for violation of an absenteeism policy does not implicate an improper retaliatory motive, particularly when the decision-makers were not aware that the absences were due to work-related injuries. *Ramirez v. IBP Inc.*, 913 F. Supp. 1421, 1436 (D. Kan. 1995). Bones must instead show that, at the time of her discharge, the decision-makers who terminated her employment were aware or should have been aware that the absences for which she was discharged were the result of a work-related injury. *Foster*, 293 F.3d at 1193.

Bones has offered no evidence, aside from her speculation about Reniker's and van Rensburg's motives, that the decision to terminate her was driven by an unlawful intent to retaliate for her potential filing for workers' compensation. Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment. *See Rice*, 166 F.3d at 1092; *Allen,* 119 F.3d at 846. Reniker and van Rensburg testified that they did not know, at the time they decided to terminate Bones, that Bones had a work-related injury for which she could file for workers' compensation. They both testified that they terminated Bones solely because of her absences in violation of Honeywell policy. Nothing in the record contradicts Reniker's and van Rensburg's testimony aside from Bones' speculative statements about their motives for terminating her employment. Such speculation does not suffice to

-11-

create a *genuine* issue of material fact as to the causal connection between her potential filing for workers' compensation and her termination. *See Rice*, 166 F.3d at 1092; *Allen,* 119 F.3d at 846.

Even presuming that the medical department knew that Bones had a work-related injury, the record still does not support a reasonable inference of retaliatory intent by the *decision-makers*. No one in the medical department told van Rensburg or Reniker about Bones' filed medical leave request until July 30th, three days *after* they made the decision to terminate Bones. Likewise, there is no evidence that either decision-maker knew of Bones' 1997 request for workers' compensation papers from nurse Thompson, or of any alleged work-related injury. Given this evidence and the medical department's policy of protecting the privacy of employee medical information, Bones cannot establish that the decision-makers were aware or should have been aware of her alleged work-related injury or potential for filing a workers' compensation claim.

A reasonable jury cannot infer from the above evidence that the decision-makers terminated Bones in retaliation for her potential filing of a workers' compensation claim for her alleged work-related injury. Thus, Bones failed to establish the causal connection prong of her *prima facie* state law claim as a matter of law. The district court therefore correctly granted summary judgment to Honeywell on Bones' state law claim.

-12-

*FMLA Claim*

Likewise, the district court did not err in concluding that Bones failed to establish, as a matter of law, an FMLA claim. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the Act. 29 U.S.C. § 2615(a).

Bones argues that Honeywell interfered with her FMLA right to take medical leave by terminating her employment. The district court granted summary judgment to Honeywell on Bones' FMLA claim because it concluded that: (1) Bones failed to give proper notice to Honeywell under the FMLA; or (2) alternatively, Honeywell met its burden of proving that Bones would have been dismissed regardless of her request for an FMLA leave, because she failed to comply with Honeywell's policy which required her to notify her supervisor of her absences.

Bones only appeals the grant of summary judgment on the first ground. Thus, she waived her right to appeal the alternate ground upon which the district court based its summary judgment on her FMLA claim. [2] Therefore, this court

---

[2]The analysis of improper notice under the FMLA is separate from the analysis of the *substantive* claim that an employer interfered with the exercise of an employee's FMLA rights. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960-61 (10th Cir. 2002) (notice not part of the analysis set out by the court for determining interference with one's FMLA rights); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001) (court assumed employee proffered adequate

(continued...)

-13-

need not address the notice issue because, even if Bones were to prevail on that issue, the grant of summary judgment to Honeywell would still stand on the alternative ground which was not appealed.

Even if Bones had not waived her appeal of the alternate ground, however, she would still not prevail on appeal because her substantive interference claim under the FMLA fails as a matter of law. Under the interference theory, if an employer interferes with an employee's FMLA-created right to a medical leave, it has violated the FMLA regardless of its intent. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). In such a case, the employee must demonstrate her entitlement to the disputed leave. *Id.* The intent of the employer is immaterial. *Id.* If dismissal would have occurred regardless of the request for an FMLA leave, however, an employee may be dismissed even if dismissal prevents her exercise of her right to an FMLA leave. *Id.* For the

---

[2](...continued)
notice to invoke FMLA protection, then proceeded to analyze substantive FMLA interference claim). Unlike the Tenth Circuit, the Sixth Circuit has explicitly made notice part of its test for interference with FMLA rights. *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719-722 (6th Cir. 2003). Bones never argues that this court should abandon its own precedent and adopt the Sixth Circuit's approach. Because this circuit's precedents do not include notice as part of the interference analysis, this court declines to follow the Sixth Circuit's approach. *See Diffee Ford-Lincoln-Mercury*, 298 F.3d at 960-61. Therefore, Bones' appeal of the notice issue does not cure her waiver of her right to appeal the substantive ground upon which the district court disposed of her FMLA claim.

-14-

purposes of this analysis, this court assumes that Bones has established her entitlement to an FMLA leave.

Bones' interference claim fails because Honeywell successfully established that Bones would have been dismissed regardless of her request for an FMLA leave. A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory. *Diffee Ford-Lincoln-Mercury*, 298 F.3d at 961 (an indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998) (to withstand summary judgment on an interference theory, an employee's termination must have been related to her request for an FMLA leave). Reniker specifically testified that he dismissed Bones because of her failure to comply with Honeywell's absence policy, and would have terminated her regardless of her request for a medical leave. Bones proffers no evidence, aside from her own speculations, that contradicts Reniker's testimony. The record shows that Bones had a history of tardiness and non-compliance with Honeywell's absence policy. Bones had previously been given warnings that her failure to notify her supervisor of her absences would lead to her termination. Reniker had terminated her on a prior occasion because he had thought that she failed to notify him of her absences.

Furthermore, it is uncontroverted that Bones did not comply with Honeywell's absence policy on the dates for which she was terminated. Bones admits that she never notified Reniker about her absences. Bones was terminated because she did not comply with Honeywell's absence policy; she would have been terminated for doing so irrespective of whether or not these absences were related to a requested medical leave. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir. 2002) (no interference if the employee would have been terminated in the absence of the FMLA request or leave). Bones' request for an FMLA leave does not shelter her from the obligation, which is the same as that of any other Honeywell employee, to comply with Honeywell's employment policies, including its absence policy. *See Diffee Ford-Lincoln-Mercury*, 298 F.3d at 960 (an employee who requests an FMLA leave has no greater rights than an employee who does not request such a leave).

No reasonable juror could deduce from the above evidence that Bones' termination was related to her request for an FMLA leave. The district court therefore correctly granted summary judgment to Honeywell on Bones' FMLA claim.

### ADA Claim

The district court did not err in concluding, as a matter of law, that Bones failed to establish an ADA claim. To qualify for relief under the ADA, a plaintiff

must establish that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without accommodation; and (3) the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability. *See Morgan v. Hilti,* 108 F.3d 1319, 1323 (10th Cir. 1997).

Even assuming, *arguendo*, that Bones can prove the other elements of a *prima facie* claim, Bones' ADA claim fails as a matter of law because she did not establish that her termination was *based on* her alleged disability. To establish such a causal connection, Bones must provide some evidence that her disability was a determining factor in Honeywell's decision to terminate her. *Hilti,* 108 F.3d at 1323. An employee cannot state a cause of action for disability discrimination when her employer terminated her for reasons unrelated to a disability. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033 (7th Cir. 1999).

Bones failed to prove that her alleged elbow disability drove Reniker and van Rensburg's decision to terminate her employment. The evidence shows that Reniker was aware of Bones' arm restrictions since the fall of 1998, over ten months prior to her termination. Ten months is too long a time lapse, standing alone, to support an inference of a causal connection between Bones' alleged disability and her termination. *See Anderson v. Coors Brewing Co.*, 181 F.3d

1171, 1179 (10th Cir. 1999) (a temporal proximity of three months, standing alone, is too attenuated to support an inference of a causal connection).

Moreover, Bones has failed to introduce other evidence that could support an inference of causal connection. The record shows that Bones was granted at least three elbow-related medical leaves by Honeywell, and her elbow restrictions were repeatedly accommodated by both Reniker and McFadden. Reniker complied with Bones' elbow restrictions and Steelman's recommended modifications of tasks as far back as 1998. Such accommodating behavior and lack of temporal proximity between Bones' termination and Reniker's first awareness of her elbow restrictions do not support an inference of discrimination on the basis of her alleged disability.

Furthermore, no evidence, aside from Bones' speculation, suggests that Reniker or van Rensburg even knew that the absences for which they terminated Bones were due to her alleged disability, or that she had requested accommodation, *i.e.*, her request for a medical leave. The record shows that Bones had absenteeism problems for years, and had received warnings that her excessive number of unexcused absences could lead to termination. Reniker testified that he could not have known if a particular unexcused absence was caused by a medical condition unless he had been so informed. Bones' bare

testimony, speculating that she was fired because of her alleged elbow disability, does not suffice to create a genuine issue of material fact as to causal connection.

No juror could reasonably infer a causal connection between Bones' termination and her alleged disability from the above evidentiary basis. Thus, there is no genuine issue of material fact as to whether Bones was terminated *because of* her alleged disability. The district court correctly granted summary judgment to Honeywell on Bones' ADA claim.

## IV. CONCLUSION

For the foregoing reasons, this court **affirms** the district court's grant of summary judgment to Honeywell.