F I L E D
**United States Court of Appeals
Tenth Circuit**

**January 18, 2006**

**Elisabeth A. Shumaker
Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHRISTOPHER RAY MARQUEZ,

    Plaintiff-Appellant,

v.

BARRY WATKINS, Lieutenant, at the
Utah State Prison, individually;
TRACY SKINNER, Officer, at the
Utah State Prison, individually;
KELLY WORLY, Officer, at the Utah
State Prison, individually,

    Defendants-Appellees.

No.  05-4121
(D.C. No. 2:02-CV-142-TS)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **McCONNELL**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Christopher Ray Marquez, a state prisoner proceeding pro se, appeals from a summary judgment in his excessive force case. We affirm.

## BACKGROUND

In May 2001, while incarcerated in the Utah State Prison's security threat unit, Marquez asked corrections officer Tracy Skinner to "see the captain to discuss getting his contact visits reinstated." Record on Appeal (ROA), Doc. 38, Ex. C at 2. Skinner either ignored Marquez or told him that the captain was unavailable. Marquez then stated:

> Look, I just want my contact visits. . . . What do I got to do? Do I got to go off? You know, do I got to show some type of attitude to go off to get somebody's attention around - - do I got to try and commit suicide?

*Id.*, Ex. A (Marquez Dep. at 28). Skinner, with the assistance of officers Barry Watkins and Kelly Worley, placed Marquez in restraints and escorted him "in an open ended triangle . . . position" to the prison's mental health unit for evaluation. *Id.*, Ex. C at 2. Along the way, the officers allegedly "pushed and shoved" Marquez. *Id.*, Doc. 3 at 4. Marquez told the officers he "want[ed] a camcorder," apparently seeking to record their actions. *Id.*, Doc. 38, Ex. A (Marquez Dep. at 33). According to Skinner and Watkins, when they were descending some stairs, Marquez "began to drop his feet," *id.*, Ex. C at 2, possibly trying to "drag [them] down," *id.*, Ex. E at 3.

Marquez was placed in a holding cell, where he claims to have been "dragged to the floor," *id.*, Doc. 3 at 4, and repeatedly punched in the back of the head to the point that he "had tears in [his] eyes" and "was crying," *id.*, Doc. 38, Ex. A (Marquez Dep. at 35). The officers deny striking Marquez and state that he was "placed . . . chest down on the floor" after he "began making unpredictable movements." *Id.*, Ex. C. Marquez claims that he laid on the floor for "a long time," possibly twenty minutes, before the officers began videotaping his treatment. *Id.*, Ex. A (Marquez Dep. at 66).

The videotape shows Marquez being thoroughly examined by medical and mental health personnel and debating his contact visitation restrictions with officers. Throughout the roughly fifty-minute tape, Marquez appears lucid and never complains of having been battered or injured, except to reveal soreness in his wrists. The medical report states that Marquez's examination revealed no bruising or abrasions and that Marquez "denie[d] any pain at all." *Id.*, Ex. D at 42. The mental health report states that Marquez "spoke freely," was "oriented to time, place and person and situation," and "admitted to being frustrated over not receiving contact visits with his 2 yr old daughter." *Id.* at 41. After his examinations, Marquez was apparently moved to the prison's maximum security unit.

Marquez sued Skinner, Watkins, and Worley for using excessive force in violation of the Eighth Amendment. The district court granted the officers summary judgment, ruling that they "reasonably perceived some resistance from [Marquez] and responded appropriately . . . by taking [Marquez] to the ground," *id.*, Doc. 49 at 6, and that "the force used against [Marquez] was de minimus and did not rise to the level of a constitutional violation," *id.* at 7. Marquez appeals.

## DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Eighth Amendment, applicable to the states via the Fourteenth Amendment, proscribes the infliction of cruel and unusual punishments against persons convicted of crimes. *Clemmons v. Bohannon*, 956 F.2d 1523, 1525 (10th Cir. 1992). But excluded from the Eighth Amendment's reach are "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10

(1992) (quotations omitted). Thus, "[n]ot every push or shove, even if it may later seem unnecessary . . . , violates a prisoner's constitutional rights." *Id.* at 9 (quotation omitted). The ultimate constitutional inquiry is whether there was an unnecessary and wanton infliction of pain. *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quotation omitted).

We conclude that Marquez's Eighth Amendment claim cannot withstand summary judgment. To the extent that the claim rests on his being pushed and shoved on the way to the mental health unit, that use of force, assuming it even occurred, was de minimis, resulted in no injury, and failed to implicate constitutional concerns. *See DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (holding that prison guard's "simple act of shoving" inmate into a door frame was not an Eighth Amendment violation). To the extent that Marquez claims he was dragged to the floor in the mental health holding cell and repeatedly punched in the back of the head, we conclude that no "reasonable jury could return a verdict" in his favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Marquez offered nothing but his own allegations to dispute the officers' contrary affidavit testimony, which is supported by the videotape and the reports from medical and mental health personnel. A party cannot manufacture a genuine issue for trial based solely on unsubstantiated allegations. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Nor does a triable issue arise from slight

variations in the officers' descriptions of the open-ended triangle escort position or the "verbal commands [issued] when taking [Marquez] to the ground," Aplt. Br. at 16. *See Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").[1]

Marquez also argues that the district court failed to rule on his motions to file "supplemental pleadings," ROA, Doc. 36, and to "order a written Declaration of Officer Selli," *id.*, Doc. 43. Through his motion to file "supplemental pleadings," Marquez sought to add that his transfer to the maximum security unit violated due process. Through his other motion, Marquez sought testimony from officer Selli who, at an unspecified date, allegedly "viewed a laceration injury to [Marquez's] head" and some bruises. *Id.*, Doc. 43 at 1. Although the district court did not expressly rule on these motions, we conclude that the district court impliedly denied them when it disposed of Marquez's complaint through summary judgment. *See Davis v. United States*, 961 F.2d 53, 57 n.6 (5th Cir. 1991). As explained below, we discern no error in their denial.

---

[1]     Marquez does not challenge on appeal, and thus we do not examine, the district court's ruling that the Eighth Amendment was not violated under the officers' version of events.

A motion to add a claim based on events challenged in the original pleading seeks amendment, rather than supplementation, *compare* Fed. R. Civ. P. 15(a) *with* Fed. R. Civ. P. 15(d), and may be denied if the proposed amendment could not withstand a motion to dismiss, *see Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). Because an inmate's transfer to maximum security is not subject to procedural due process protection in the absence of a state-imposed constraint on transfer, *see Meachum v. Fano*, 427 U.S. 215, 229 (1976), which Marquez did not allege and we have not found, he was not entitled to amend his complaint to challenge his transfer to maximum security.

Regarding Marquez's motion seeking the declaration of officer Selli, it appears that Marquez was asking the district court to supplement the *Martinez* report. We see no reason why the district court should have granted the motion, given that Marquez (1) offered no date on which his injuries were supposedly viewed by Selli and (2) even stated that when Selli inquired about the injuries, he (Marquez) did not attribute them to Skinner, Watkins or Worley. ROA, Doc. 43 at 2.

The judgment of the district court is AFFIRMED. Marquez's motion to proceed on appeal without prepayment of fees is GRANTED, and he is reminded of his continuing obligation to make partial payments until he has paid the filing fee in its entirety. *See* 28 U.S.C. § 1915(b).

Entered for the Court

Stephen H. Anderson
Circuit Judge