**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

PAUL JANCZAK,

    Plaintiff - Appellant,

v.

TULSA WINCH, INC.,

    Defendant - Appellee.

No. 14-5071
(D.C. No. 4:13-CV-00154-CVE-FHM)
(N.D. Okla.)

————————————————————

**ORDER AND JUDGMENT**[*]
————————————————————

Before **KELLY**, **EBEL**, and **LUCERO**, Circuit Judges.
————————————————————

    After suffering an injury, Paul Janczak took leave under the Family and Medical Leave Act ("FMLA"). Immediately upon his return from FMLA leave, his employer, Tulsa Winch, Inc. ("TWI"), terminated his employment. TWI claimed that it had decided to terminate Janczak's position while he was on leave. Janczak sued, alleging interference and retaliation under the FMLA. The district court granted summary judgment in favor of TWI, concluding that Janczak would have been fired even if he had not taken FMLA leave. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the grant of summary judgment on the retaliation claim. However, because a reasonable jury could find that TWI interfered with Janczak's FMLA leave, summary judgment was

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

prematurely granted on the interference claim. Accordingly, on the interference claim, we reverse and remand for further proceedings.

**I**

Paul Janczak was hired by TWI in June 2010 as General Manager ("GM") of Canadian operations. In May 2012, his immediate supervisor, Andrew Masullo, was fired for an "inappropriate management style, including bullying of employees." At that time, TWI President Steve Oden stated that Janczak would continue to lead Canadian operations at the firm and would have an opportunity to demonstrate his leadership skills. The next month, Janczak attended a leadership program alongside other TWI managers, and was found to have met performance standards. A summary of Janczak's leadership competencies prepared in mid-July 2012 stated the following:

> Paul has begun demonstrating the leadership you would expect to find in a General Manager. Our Canadian organization has significant growth initiatives in place that will need strong support and leadership to be fully realized. Paul has demonstrated enthusiasm about our new structure and the opportunity [sic] demonstrate his leadership skills and I look forward to seeing him take full advantage of it. This will be further reviewed at the end of Q3.

Oden attests that on June 18, 2012, he visited the site where Janczak worked and observed that, after Masullo's departure, "the business structure in Canada was evolving toward a matrix reporting structure wherein almost all of the Canadian department heads were reporting directly into [sic] the functional executives at corporate headquarters in Jenks, Oklahoma." He also attests that, at a meeting on June 26, someone raised the question "whether there was a need for a GM in Canada," and that on July 6, Jill Evanko, a vice president at TWI, "recommended elimination of [the GM] position."

-2-

On July 30, Janczak was injured in a vehicle accident. As a result, he took FMLA leave between July 31, 2012 and October 1, 2012. In mid-August, Janczak forwarded his FMLA leave certification to TWI. Janczak reports that he provided Oden additional information about his medical condition during an August 23, 2012 phone call.

At the start of Janczak's leave, Oden had not broached the elimination of Janczak's position with him. On August 8, Oden emailed Bill Spurgeon, to whom he reported, to inform Spurgeon that although he would "be evaluating Paul's performance as a GM and the need for a GM in general," he was "generally not a fan of a highly matrixed and remote management structure . . . [p]articularly in the case of [the] Canadian operation." Oden suspected that TWI "will need a strong onsite presence to make sure things are getting done," and intended to give Janczak "time to demonstrate his capabilities" and show that he is "the guy for that." In an affidavit, Oden asserts that "on or about August 14, 2012," he decided to eliminate the GM position in Canada and terminate Janczak's employment.

Nevertheless, on the morning of August 14, Oden emailed Spurgeon to inform him that he planned to "further evaluate Paul's ability to provide the necessary leadership" after his return from FMLA leave. And on August 21, Oden reported that Dave Rowland, another TWI employee, "would be providing oversight of the supply chain and manufacturing area during Paul's absence which is estimated to run for the next three weeks." He also announced on August 21 that two new hires "will report directly to the General Manager" in Canada. A contemporaneous announcement from TWI stated that Janczak "may be able to travel and return to work sometime around the middle of

-3-

September." In an August 24 email, Cheryl Bailey, Director of Human Resources at TWI, identified "Supporting Paul (upon his return)" as an agenda item. Bailey's notes from a meeting on August 27 contained a variety of notations regarding Janczak, including "Check Paul's contract," "Rowland as next GM," "Spurgeon vs Janczak," "phase PZ out," "what is plan for Paul – eliminate position." On August 31, Oden told Spurgeon that he planned to eliminate the GM position and end Janczak's employment. On October 1, 2012, the day he returned to work, Janczak was told that his employment had been terminated effective immediately "due to the discontinuation of [his] function."

Subsequent to Janczak's firing, a matrix reporting structure was adopted and several Canadian management positions were eliminated, with the remaining Canadian department heads reporting to executives in Oklahoma. This change resulted in TWI firing its longtime Canadian Controller, Garry Jung.

On March 18, 2013, Janczak filed suit alleging that TWI engaged in retaliation under the FMLA and interfered with his exercise of FMLA rights. Following discovery, Janczak and TWI filed cross motions for summary judgment. The district court denied Janczak's motion and granted TWI's motion. Janczak v. Tulsa Winch, Inc., No. 13-CV-0154-CVE-FHM, 2014 WL 2197794, at *11 (N.D. Okla. May 27, 2014) (unpublished). It concluded that Janczak had established the first two elements of his FMLA interference claim but that TWI had shown, as a matter of law, that it would have discharged Janczak even if he had not exercised his FMLA rights. Id. at *9-10. The district court also concluded that Janczak satisfied the first two elements of a prima facie case of FMLA retaliation, but that he had not shown a genuine issue of material fact as to a causal

-4-

connection between his protected activity and his discharge.  Id.  Janczak timely

appealed.

## II

A district court decision regarding a motion for summary judgment in an FMLA

case is reviewed de novo on appeal, applying the same standard as the district court.

Turner v. Pub. Serv. Co., 563 F.3d 1136, 1142 (10th Cir. 2009).  We view facts in the

light most favorable to Janczak as the non-moving party and draw all reasonable

inferences in his favor.  Tabor v. HILTI, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013).  "If

a reasonable jury could return a verdict for the nonmoving party, summary judgment is

inappropriate."  Riser v. QEP Energy, 776 F.3d 1191, 1195 (10th Cir. 2015) (quotation

omitted).

Janczak took leave under an FMLA provision "allowing leave because of a serious

health condition that makes the employee unable to perform the functions of the position

of such employee."  Brockman v. Wyo. Dep't of Family Servs., 342 F.3d 1159, 1164

(10th Cir. 2003) (citing 29 U.S.C. § 2612(a)(1)(D)) (quotation and alteration omitted).

We have observed that

> [t]he legislative history accompanying the passage of the FMLA reveals
> two motivations for the inclusion of [this] provision.  First, Congress was
> attempting to alleviate the economic burdens to both the employee and to
> his or her family of illness-related job-loss.  Second, Congress was
> attempting to prevent those with serious health problems from being
> discriminated against by their employers.

Id. (citations omitted).  The FMLA also contains a provision prohibiting certain acts by

employers.  § 2615.  "This circuit has recognized two theories of recovery under

-5-

§ 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)." Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir. 2006). "These two theories of recovery are separate and distinct theories that require different showings, differ with respect to the burden of proof, and differ with respect to the timing of the adverse action." Dalpiaz v. Carbon Cnty., Utah, 760 F.3d 1126, 1131 (10th Cir. 2014) (quotations and alteration omitted). In particular, "the employer bears the burden of proof on the third element of an interference claim once the plaintiff has shown her FMLA leave was interfered with," whereas the same is not true on a retaliation claim. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007). Because of these differences, it is generally easier for a plaintiff to prevail under an interference than a retaliation theory. Id. ("Due to this difference in where the burden lies with respect to the third element of each theory, it is not unusual for a plaintiff to pursue an interference theory while the defendant argues that the evidence may only be analyzed under a retaliation theory.").

## A

We begin by considering Janczak's interference claim. Section 2615(a)(1) states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," such as the right to take FMLA leave. Three elements are necessary to establish an FMLA interference claim: (1) that the employee was entitled to FMLA leave; (2) that some adverse action by the employer interfered with the employee's right to take FMLA leave;

and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights. DeFreitas v. Horizon Inv. Mgmt. Corp., 577 F.3d 1151, 1159 (10th Cir. 2009). If an employee demonstrates the first two elements, the employer bears the burden of demonstrating that the adverse decision was not related to the exercise of the employee's FMLA rights. Dalpiaz, 760 F.3d at 1132.

As the district court correctly noted, "unlike in a retaliation claim, an employer defending against an interference claim has the burden of proving that it would have terminated the employee regardless of the employee's FMLA leave." Janczak, 2014 WL 2197794, at *10 (citing Sabourin v. Univ. of Utah, 676 F.3d 950, 962 (10th Cir. 2012)); accord Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004) ("If dismissal would have occurred regardless of the request for an FMLA leave . . . an employee may be dismissed even if dismissal prevents her exercise of her right to an FMLA leave."). The district court concluded that TWI had established as a matter of law that it would have fired Janczak regardless of his FMLA leave on the basis of materials provided by TWI showing that it was contemplating Janczak's position prior to his leave. Janczak, 2014 WL 2197794, at *10.

We agree that TWI provided evidence suggesting that it was contemplating eliminating the GM position before Janczak was placed on leave. But such evidence does not constitute sufficient proof to permit summary judgment. Our precedent requires an employer seeking summary judgment on an interference claim to show that termination would certainly have occurred regardless of leave. See DeFreitas, 577 F.3d at 1160 (considering whether the employee "would have been fired anyway, regardless of

-7-

leave"); accord Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 548 (4th Cir. 2006) (holding that "an employer may deny restoration when it can show that it would have discharged the employee in any event regardless of the leave").

In concluding that evidence of contemplated but not definitive termination was sufficient to dismiss an FMLA interference claim at the summary judgment stage, the district court relied on Clark County School District v. Breeden, 532 U.S. 268 (2001) (per curiam), a Title VII harassment case in which the Court noted that an employer's "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Id. at 272. However, because Breeden involved only a retaliation claim, see id. at 269, the employee bore the burden of establishing causality. In contrast, TWI bears the burden of demonstrating that Janczak's termination was not related to the exercise of his FMLA rights. See Dalpiaz, 760 F.3d at 1132. And Breeden does not establish that proceeding along previously contemplated lines negates other evidence on which a jury might base its conclusion that a termination was related to the exercise of FMLA rights.

Our cases upholding summary judgment against an employee who was fired while validly taking FMLA leave have involved undisputed evidence that the employee in question would have been terminated even if FMLA leave had not been taken. E.g. Dalpiaz, 760 F.3d at 1134 (employee failed "to comply with a direct and legitimate order from her supervisors"); Brown v. ScriptPro, LLC, 700 F.3d 1222, 1228 (10th Cir. 2012) ("overwhelming evidence of . . . performance issues" that predated the leave); Bones, 366 F.3d at 877-78 (employee had repeatedly been tardy and was noncompliant with absence

-8-

policy on the date she was terminated); McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1102 (10th Cir. 2002) (employee, prior to leave, had been tardy, absent from her desk, and failed to timely pay invoices or update list of services received from vendors). In contrast, we allowed an FMLA claim to go to a jury, even though substantial evidence existed supporting the assertion that the employee was fired for reasons unrelated to the leave, in a case where the employee had been a strong performer and the employer's proffered evidence contained internal inconsistencies. See DeFreitas, 577 F.3d at 1160-61.

There is no evidence that Janczak ever violated company policy, was deficient in his duties, or was insubordinate, as in Dalpiaz, Bones, Brown, or McBride. Nor does the evidence proffered by TWI constitute undisputed proof that Janczak's position was definitively slated for elimination before his leave began. Construed in the light most favorable to Janczak, the evidence TWI presented, including Evanko's July 6 recommendation that the GM position be eliminated and Oden's report that he reevaluated the need for the GM position after firing Masullo, merely establish that the company was uncertain about the future of its Canadian operations. This case is not like Sabourin, where the evidence was "unequivocal that the reduction-in-force decision had already been made" before the employee took FMLA leave. Cf. 676 F.3d at 959.

Even though TWI provided evidence that might persuade a jury to conclude that Janczak's leave ultimately played no role in his termination, the grant of summary judgment prematurely took that determination from the jury. See Brown, 700 F.3d at 1227 (observing that "summary judgment for the employer is warranted only when there

-9-

is no genuine dispute as to any material fact regarding the grounds for termination," and that "the question . . . is not whether a reasonable jury could find in favor of [the employer], but rather whether the evidence is so one-sided that submission to a jury is not required"); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (holding that, in deciding whether to grant summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented"); Bullington v. United Air Lines, Inc., 186 F.3d 1310, 1315 (10th Cir. 1999), overruled on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (concluding that summary judgment in employment discrimination case was premature despite significant weaknesses in employee's argument).

Under the facts of this case, a reasonable jury might conclude that Janczak's FMLA leave directly contributed to the decision to terminate him. For instance, a jury could conclude that Oden would not have reconsidered the importance of keeping a GM position in Canada, given his stated feeling as late as early August that a strong onsite presence was needed, had Janczak not gone on extended leave. This interpretation would be further bolstered by Oden's statements in an August 14 email to Spurgeon emphasizing the importance of "further evaluat[ing] Paul's ability to provide the necessary leadership," his statements in an August 21 email to Spurgeon that "Rowland will be providing oversight of the supply chain and manufacturing area during Paul's absence which is estimated to run for the next three weeks," and TWI's August 21

announcement that "[w]e are hopeful that Paul may be able to travel and return to work sometime around the middle of September."

Additionally, as Janczak explains, the record makes it arguable that the decision to terminate him became definitive not on Oden's stated date of August 14, but instead later that month, shortly after additional information about Janczak's medical condition had been received. See DeFreitas, 577 F.3d at 1160 (observing that "[w]henever termination occurs while the employee is on leave, that timing has significant probative force," and describing a termination that "occurred just one day after [the employee] told [the employer] that she would need to take a full six weeks off and could not return sooner" as involving "particularly suggestive" timing); cf. Brown, 700 F.3d at 1227 (stating that an employee's being "fired only two days after his emails and meeting with [the employer] about taking time off" for FMLA reasons "may be enough to prove the third element of an interference claim, especially because the employer's intent is irrelevant"). A reasonable jury might rely on this information to infer that the decision to eliminate Janczak's position was related to his medical condition and his exercise of FMLA leave.

On the record before us, a reasonable jury could conclude that Janczak's taking FMLA leave played a role in his ultimate termination and so find in his favor. Though taking advantage of Janczak's absence to reevaluate the value of his contributions to the company might appear a prudent economic decision in the abstract, protecting ill or caregiving employees from the effects of such a decision is precisely the purpose of the FMLA. See DeFreitas, 577 F.3d at 1161 (observing that "the FMLA was enacted because employers had found it in their economic self-interest to fire employees who

-11-

missed too much work for medical care or other reasons now addressed by the FMLA");

Brockman, 342 F.3d at 1164 (recounting the FMLA's purpose to "alleviate the economic burdens to both the employee and to his or her family of illness-related job-loss"); cf. Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 959 (10th Cir. 2002) (employee prevailed on FMLA interference claim even though "[d]uring [her] absence, [the employer] says it became apparent" that she had not fully trained her subordinate).

TWI is correct that courts are not empowered to be "super-personnel departments" that can second-guess business judgments. See Bullington, 186 F.3d at 1318 n.14. But, on summary judgment, we must view facts in the light most favorable to Janczak and draw all inferences in his favor. Tabor, 703 F.3d at 1215. On the record before us, a reasonable jury could—though need not—find in Janczak's favor on the interference claim. Accordingly, the grant of summary judgment was in error.

**B**

Janczak also advances an FMLA retaliation claim. We analyze retaliation claims using the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, "the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." Metzler, 464 F.3d at 1170. "To make out a prima facie retaliation claim, [Janczak] must show that: "(1) [he] engaged in a protected activity; (2) [his employer] took an action that a reasonable employee would have found materially adverse; and (3)

-12-

there exists a causal connection between the protected activity and the adverse action." Campbell, 478 F.3d at 1287 (quotation omitted).

We agree with Janczak that, for reasons similar to those discussed supra, the temporal proximity between his leave and his firing, combined with the other evidence he provides, suffices to establish a prima facie case of retaliation. See Metzler, 464 F.3d at 1171-72. We therefore consider whether TWI articulated a legitimate, nonretaliatory reason for terminating Janczak. On these facts, we conclude that it articulated such a reason. Terminating Janczak as part of a general reorganization of managerial responsibilities constitutes a non-retaliatory basis for termination, and TWI has offered evidence that such a reorganization has occurred. Cf. Yashenko, 446 F.3d at 551 (concluding that reorganization constitutes a legitimate, nonretaliatory basis for termination).

Because TWI has articulated a legitimate, nonretaliatory reason for his termination, the burden shifts back to Janczak to show that the stated reasons were pretextual. We conclude that he fails to do so. Unlike his detailed explanation of why TWI's conduct constituted interference, his argument concerning pretext is conclusory and underdeveloped: it consists only of a restatement of his temporal proximity argument, which he concedes is insufficient to prove pretext, and conclusory allegations that TWI's real motivations were retaliatory. We do not see how the alleged evidentiary discrepancy regarding whether TWI decided to terminate his employment on August 14 or August 27, absent further corroborating information, demonstrates that the "given reasons for terminating [Janczak] are so weak, implausible, inconsistent, incoherent, or

-13-

contradictory as to support a reasonable inference that [TWI] did not act for those reasons." Metzler, 464 F.3d at 1179.

Moreover, Janczak does not meaningfully address the fact that TWI restructured its operations to permanently eliminate the position he occupied and that another managerial employee, Jung, was also fired as part of that restructuring. We have observed that "[a] retaliation claim is premised on an adverse employment action that was allegedly motivated by the employee's choice to take the protected leave," and that "[i]n the typical retaliation claim, the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." Robert v. Bd. of Cnty. Comm'rs, 691 F.3d 1211, 1219 n.6 (10th Cir. 2012). Janczak's situation does not fit this pattern, because he was never restored to his prior employment status; rather, it fits much more naturally into an interference theory.

Accordingly, we conclude that summary judgment was proper as to the retaliation claim, even though it was premature as to the interference claim. Resolving the interference claim involves a fundamentally causal inquiry: whether Janczak's taking FMLA leave was causally connected to his termination. In contrast, resolving the retaliation claim involves an inquiry into motivation: whether TWI's proffered rationale for terminating Janczak was mere pretext for its true, retaliatory motivation. Though causation and motivation frequently align, the difference between interference and retaliation claims illustrates that such alignment is not always necessary. See Johnson v.

-14-

Rodriguez, 110 F.3d 299, 313 (5th Cir. 1997) ("The situation of pretext . . . concerns the existence of retaliatory motivation, not causation.").

We have previously observed that our precedent regarding FMLA claims "could well result on occasion in granting or affirming summary judgment to an employer on a retaliation claim but not on an equivalent interference claim."  See Sabourin, 676 F.3d at 962.  Because Janczak has offered sufficient evidence for a reasonable jury to conclude that his FMLA leave played a causal role in his termination, but not sufficient evidence for that jury to conclude that the motivation for terminating him was retaliatory, this case represents such an occasion.

### III

We **AFFIRM** the grant of summary judgment on Janczak's retaliation claim, **REVERSE** the grant of summary judgment on his interference claim, and **REMAND** for further proceedings.

Entered for the Court

Carlos F. Lucero
Circuit Judge