**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**December 7, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

LISA MARES,

     Plaintiff - Appellant,

v.

COLORADO COALITION FOR THE
HOMELESS,

     Defendant - Appellee.

No. 21-1001
(D.C. No. 1:19-CV-03144-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **MORITZ**, **KELLY**, and **BRISCOE**, Circuit Judges.

_____

Plaintiff-Appellant Lisa Mares appeals from the district court's grant of

summary judgment. Ms. Mares argues that the district court failed to recognize that

her termination was caused by her use of Federal Medical and Leave Act (FMLA)

leave. Aplt. Br. at 52. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**Background**

Ms. Mares was hired by the Colorado Coalition for the Homeless (CCH) in

2006. 1 JA 6. Ms. Mares reviewed and signed the CCH employee handbook when

---

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

she was hired. 1 JA 59. The handbook included CCH's attendance policy, which required an employee to provide notice of an absence and explained that unexcused absences may result in termination. 1 JA 84–85.

In 2017, as a result of several domestic violence incidents, Ms. Mares took substantial time off. See 1 JA 61–62. By October 9, 2017, Ms. Mares had exhausted her paid time off. 1 JA 98. Ms. Mares subsequently had eleven unexcused absences from October 9 through October 23, 2017. 1 JA 98, 133. On October 24, 2017, Ms. Mares was certified for FMLA leave. 1 JA 109–10. On November 9, 2017, Ms. Mares's psychiatrist cleared her to return to work immediately. 1 JA 112–15. Ms. Mares failed to show up to work on November 10, 2017. 1 JA 122. Ms. Mares was also absent the following week. 1 JA 129–31, 133.

Ms. Mares was put on administrative leave on November 17, 2017. 1 JA 133. On November 20, 2017, Ms. Mares's supervisor recommended that her employment be terminated due to her excessive unexcused absences. 1 JA 133. Ms. Mares was subsequently terminated. 1 JA 67. Ms. Mares alleges that CCH terminated her in violation of the Americans with Disabilities Act and the FMLA. 1 JA 5. The district court granted CCH's motion for summary judgment. 3 JA 364–84. On appeal, Ms. Mares argues that the district court erred in holding that she had not provided proper notice of her need for FMLA leave and that she had not shown that her termination was related to the exercise of her FMLA rights.

## Discussion

We review the district court's grant of summary judgment de novo.  Throupe v. Univ. of Denver, 988 F.3d 1243, 1250 (10th Cir. 2021).  "In order to prevail on an FMLA interference claim, the employee must show that she was entitled to FMLA leave and that some action by the employer, such as termination, interfered with her right to take that leave."  Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 1006 (10th Cir. 2011).  However, "[i]f dismissal would have occurred regardless of the request for an FMLA leave, . . . an employee may be dismissed even if dismissal prevents her exercise of her right to an FMLA leave."  Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004).  An interference claim may be defeated if an employer can show that the employee "failed to give proper notice to [the employer] under the FMLA."  Id.  Additionally, an interference claim may be defeated if the employer can demonstrate "that it terminated [the employee] because of her violation of the company's notice-of-absence policy rather than her taking of FMLA leave."  Twigg, 659 F.3d at 1007.

Ms. Mares was approved for and received FMLA leave from October 24 to November 9, 2017.  1 JA 109–10, 114.  Ms. Mares's FMLA certification also provided that she was incapacitated from approximately October 1 to October 24, 2017, when Ms. Mares had several unexcused absences.  See 1 JA 63, 113.  However, she was also absent without notice the week after November 9, 2017.  See 1 JA 129–31.  While Ms. Mares did have approval for intermittent FMLA leave after November 9, 2017, in the event of future "flare-ups," 1 JA 114, she was still required

3

to give CCH notice.  1 JA 90.  She failed to do so.  See 1 JA 129–31.  Therefore, these absences violated CCH's attendance policy.  See 1 JA 84–85.  We agree with the district court that the employer was not required to discern that Ms. Mares sought to comply with the notice requirement or sought FMLA leave.  See 3 JA 376–77; Twigg, 659 F.3d at 1008–09.  Nor does the record contain any significantly probative evidence that CCH's actions were related to her FMLA leave.  See Jones v. Denver Pub. Schs., 427 F.3d 1315, 1319 (10th Cir. 2005).

       AFFIRMED.

                               Entered for the Court


                               Paul J. Kelly, Jr.
                               Circuit Judge

No. 21-1001, *Mares v. Colorado Coalition for the Homeless*
**BRISCOE**, Circuit Judge, concurring.

I concur, but write separately to offer my reasoning as to why the district court was correct in granting summary judgment in favor of defendant CCH on Mares' claim that CCH interfered with her rights under the Family and Medical Leave Act (FMLA).

The FMLA entitles "[a]n eligible employee"[1] to take up to twelve weeks of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform" his or her position.  29 U.S.C. § 2612(a)(1)(D); *see Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017).  Under the FMLA, leave "may [also] be taken intermittently or on a reduced leave schedule when medically necessary."  29 U.S.C. § 2612(b)(1).

To help ensure that eligible employees can exercise their rights under the FMLA, Congress has, in pertinent part, prohibited employers from (1) "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the FMLA, 29 U.S.C. § 2615(a)(1), and (2) "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by" the FMLA, 29 U.S.C. § 2615(a)(2).  Consistent with these statutory provisions, we "ha[ve] recognized two theories of recovery under § 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from

---

[1] The phrase "eligible employee" is defined as "an employee who has been employed . . . (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2).  It is undisputed that Mares was an "eligible employee" of CCH.

§ 2615(a)(2)." *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014) (quotation marks omitted).

In this case, Mares asserts a claim of FMLA interference. "To establish a claim of FMLA interference under § 2615(a)(1), an employee must show (1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Id*. at 1132 (quotation marks omitted). As these elements make clear, "an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Id*. "If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse action was not related to the exercise or attempted exercise of [the employee's] FMLA rights." *Id*. (quotation marks omitted; brackets in original). "[I]f an employer presents evidence that an employee was dismissed for her failure to comply with the employer's absence-notification policy, this is sufficient to demonstrate the termination was not legally 'related to' the exercise of FMLA leave, even if the employee's absences were caused by a requested medical leave." *Id*. at 1132–33.

The district court assumed that Mares could satisfy the first element of her interference claim. More specifically, the district court noted that "the record establishe[d] that [Mares] was, in a sense, 'preapproved' for FMLA leave based on her psychiatrist's statements concerning ongoing and regular occurrences of incapacitation,

2

during which she could not work." JA, Vol. III at 374. The district court therefore "assume[d] that, if properly requested, she could have received FMLA leave for her absences beyond November 9, 2017." *Id*. But the district court concluded that there were no genuine issues of material fact regarding the second and third elements of the interference claim, and that CCH was entitled to summary judgment in its favor on the interference claim.

In her appeal, Mares challenges, in pertinent part, the district court's conclusion that no reasonable juror could find in her favor on the third element of her FMLA interference claim. The third element of an FMLA interference claim, as noted, requires the plaintiff to establish that the employer's action was related to the exercise or attempted exercise of the plaintiff's FMLA rights. The district court noted that "regardless of the FMLA certification (which reasonably could be interpreted as clearing [Mares] for work commencing November 10, 2017)," Mares "knew CCH expected her back to work in mid-November . . . and kept promising (sometimes daily) CCH that her return was imminent," but that "several weeks passed with no word from" her "and no request for leave." *Id*. at 375. "Even through the date of her termination," the district court noted, Mares "never even notified CCH of her desire for any type of leave." *Id*. at 376. The district court concluded that the undisputed evidence established that "CCH had a facially reasonable basis for the termination: violation of [its] attendance policy." *Id*. at 377. In other words, the district court stated that it "f[ou]nd no material evidence of any other reason for the termination except violation of the CCH attendance policy." *Id*. at 378.

The record on appeal fully supports the district court's determination. CCH's Employee Handbook included an "Attendance and Punctuality" provision that required Mares to notify her supervisor "no later than one hour prior to [her] assigned starting time" if she could not "report to work by [her] assigned starting time." *Id*., Vol. I at 84. Notably, CCH's "Attendance and Punctuality" provision expressly stated: "Because of the disruption caused by no show/no calls, even one no show/no call constitutes misconduct, and the offending employee may be subject to disciplinary action, up to and including termination of his/her employment." *Id*. at 84–85. The evidence in the record is undisputed that Mares violated this policy every workday between Monday, November 13, 2017, and Thursday, November 16, 2017, when her supervisor placed her on administrative leave (and that Mares had previously and repeatedly violated this policy prior to obtaining approved FMLA leave). When Mares' supervisor terminated Mares' employment on November 20, 2017, she prepared a "Memorandum of Termination" that noted she was terminating Mares' employment "[d]ue to excessive unexcused absences." *Id*. at 133.

I therefore agree with the district court that no genuine issues of material fact existed with respect to the third element of Mares' interference claim, and that reasonable jurors could not find in Mares' favor on this element. As a result, I find it unnecessary to address Mares' arguments concerning the second element of her interference claim.