**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRIDGET DALPIAZ,

        Plaintiff - Appellant,

v.

CARBON COUNTY, UTAH; ROSE
BARNES, individually and in her capacity
as Carbon County Human Resources
Director; CHRISTIAN B. BRYNER,
individually and in his capacity as Carbon
County Attorney; SAMUEL P. CHIARA,
individually and in his capacity as
Chairperson and member of the Carbon
County Career Service Council;
WILLIAM L. GIGLIOTTI, individually
and in his capacity as a member of the
Carbon County Career Service Council;
JUANITA RICHARD, individually and in
her capacity as a member of the Carbon
County Career Service Council; JOHN
JONES, individually and in his capacity
as Carbon County Commissioner;
WILLIAM D. KROMPEL, individually
and in his capacity as Carbon County
Commissioner; MICHAEL S.
MILOVICH, individually and in his
capacity as Carbon County
Commissioner,

        Defendants - Appellees.

No. 13-4062

Alan W. Mortensen (Edward B. Havas and Paul M. Simmons with him on the briefs) of Dewsnup, King & Olsen, Salt Lake City, Utah, for Plaintiff–Appellant.

Jesse C. Trentadue (Britton R. Butterfield with him on the brief) of Suitter Axland, PLLC, Salt Lake City, Utah, for Defendants–Appellees.

Before **TYMKOVICH, McKAY,** and **MATHESON,** Circuit Judges.

**McKAY**, Circuit Judge.

In September 2009, Plaintiff Bridget Dalpiaz was terminated from her position as the benefits administrator for Carbon County, Utah. In her subsequent federal lawsuit against the county and various county officials, she raised several claims for relief, including one claim of "Violation of the [Family and Medical Leave Act] – Interference with FMLA Rights" against the county. (Appellant's App. at 25.) The district court granted summary judgment to all Defendants on all claims. On appeal, Plaintiff challenges only the denial of her FMLA claim against Carbon County.

**I.**

Plaintiff worked for Carbon County from February 1995 until her termination in September 2009. As the county benefits administrator, she was very familiar with the FMLA, and her job requirements included scheduling doctor's appointments for new

-2-

county employees. Until she was injured in a motor vehicle accident in April 2009, she had favorable evaluations and no prior disciplinary history.

After suffering a motor vehicle accident on April 3, 2009, Plaintiff visited her personal physician, who sent her to physical therapy and referred her to a spine specialist in Utah County. Plaintiff testified she had a difficult time getting an appointment with the Utah County spine specialist, but he eventually saw her on June 26 and July 10, 2009. He referred her for more physical therapy. Plaintiff did not return to work until July 13, 2009, and then only on a limited basis. Plaintiff obtained work-release forms for all of the weeks she took off work, with most of the releases coming from her personal physician's office.

Because of Plaintiff's extended absence from work, the county asked her to submit a request for FMLA leave. On May 21, 2009, approximately seven weeks after the accident, Plaintiff's supervisor in the human resources department sent her an FMLA form and asked her to complete and return the form "as soon as possible." (*Id.* at 176.) Three weeks later, Plaintiff still had not responded to this request. On June 12, 2009, Plaintiff's supervisor sent her an email, in which she stated:

> Also, although you have not returned a completed FMLA request form, I will begin to run your FMLA time from the date that it was mailed to you from our office. Of course, I still need you to fill out the application in order for it to be finally and officially considered for approval.

(*Id.* at 222.) Despite this email, Plaintiff still failed to return a completed FMLA form. Accordingly, on June 30, 2009, the county's attorney sent Plaintiff a letter that stated in

part:

> Because of the duration of your absences, on May 21, 2009, Rose Barnes
> requested that you have your health care provider complete the Certification
> of Health Care Provider for Employee's Serious Health Condition.  We
> have repeatedly requested that you provide the form to us but you still have
> not done so.

(*Id.* at 224.)  The county attorney then told Plaintiff that she was required to return the

FMLA form by July 10, 2009.  Plaintiff finally returned the FMLA form at 4:22 pm on

July 10, just barely meeting the deadline set by the county.

On July 13, 2009, Plaintiff returned to work for two hours a day, two times per

week, in accordance with the work restrictions given to her by the Utah County spine

specialist.  Plaintiff apparently remained on this limited work schedule up until her

suspension on August 24, 2009.

While Plaintiff was gone from work, Plaintiff's supervisor began hearing reports

from community members and other county employees that Plaintiff was engaging in

physical activities which seemed to be inconsistent with her claims of injury.  Plaintiff's

supervisor testified these reports became more frequent and consistent as time passed.  As

these reports continued, the supervisor began asking the complaining individuals if they

would put their statements in writing.  She ultimately received eight written statements

from Plaintiff's co-workers who reported observing Plaintiff performing various physical

activities such as playing football with her children, working in her yard, and assisting her

children with costume changes and other tasks at lengthy dance rehearsals and recitals.

Based on these reports, the supervisor decided to ask Plaintiff to submit to an independent

-4-

medical examination ("IME") to confirm she was entitled to FMLA leave. Accordingly, on July 15, 2009, the county attorney sent Plaintiff a letter instructing her to make an appointment with one of three listed doctors for an IME. She was told to inform the county attorney of the date of the appointment and to call him if she had any questions or concerns. However, Plaintiff neither scheduled an IME nor contacted the county attorney about his letter. On July 27, 2009, the county attorney sent Plaintiff a second letter again instructing her to schedule an IME. He asked her to confirm to him no later than August 3, 2009, that she had scheduled this exam, and he told her that failure to provide this information by that date might subject her to formal disciplinary procedures. He again told her "not [to] hesitate to call" him if she had any questions or concerns. (*Id.* at 291.)

After receiving this second letter, Plaintiff attempted to make an IME appointment, but she was told she needed a doctor's referral. She did not attempt to obtain a referral through her personal physician or the Utah County spine specialist she had previously visited.[1] Instead, she sent an email to the county attorney, stating:

> I have attempted to schedule an appointment with the doctor you requested, on two occasions. Both times I have tried, I was informed that they would only see me with a doctor's referral. I explained the situation and offered to fax them a copy of my letter from you and they said I had to have a doctor's referral. Let me know what you would like me to do now.
>
> Also, I have no problem with seeing an additional doctor. However, I would like to know if this is a policy that Carbon County has now (to send

---

[1] In her deposition, Plaintiff was asked if she knew how to get a referral from a doctor. She testified: "Well, of course I know how to get a doctor's referral." (Appellant's App. at 126.)

employees to additional doctor's [*sic*] when they are on FMLA leave) and if so I would like a copy of it and when it went into effect. Also, I want to know that the other employees on FMLA have had to do the same thing.

(*Id.* at 293.) The county attorney never responded to this email, and Plaintiff never called him about her questions and concerns. She made no more attempts to schedule the requested IME, and thus an IME was never conducted.

Plaintiff's supervisor ultimately decided to discharge Plaintiff. On August 24, 2009, Plaintiff's supervisor and the county attorney met with Plaintiff and gave her a Notice of Intent to Discipline for five alleged violations of the county's policies and procedures: (1) failure to timely complete the FMLA forms after they were sent to her in May 2009; (2) failure to schedule an IME; (3) significant evidence of untruthfulness regarding the extent of her injuries and her ability to work; (4) abuse of sick leave; and (5) personal use of a digital camera belonging to the county. Plaintiff was suspended with pay on August 24, 2009. On September 4, 2009, she was discharged for the same five reasons given in the initial notice.

In her federal complaint, Plaintiff raised six causes of actions relating to her termination. Her fifth cause of action was entitled "Violation of the FMLA – Interference with FMLA Rights" and alleged the county "interfered with, restrained, and/or denied Plaintiff's FMLA rights to medical leave and to reinstatement following the leave when it terminated Plaintiff's employment." (*Id.* at 25-26.) The district court ultimately granted summary judgment in favor of all Defendants on all of Plaintiff's claims for relief. In disposing of Plaintiff's FMLA claim, the court explained:

-6-

In the present case, Plaintiff has not established that the Defendants interfered with her right to take FMLA leave. Moreover, Plaintiff cannot show a causal connection between her application for FMLA and her termination. There is no evidence that the County took any adverse action related to Plaintiff's attempt to take FMLA leave. As such Plaintiff's FMLA claims fail as a matter of law.

(*Id.* at 666.) On appeal, Plaintiff challenges the district court's entry of summary judgment only as to her FMLA claim.

## II.

We review the district court's summary judgment ruling de novo, applying the same legal standards as the district court. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1123 (10th Cir. 2012). "Summary judgment should be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted).

The first question we must resolve in this appeal is the type or types of FMLA claim at issue in this case. "This circuit has recognized two theories of recovery under [29 U.S.C.] § 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). These two theories of recovery are separate and distinct theories that "require different showings[,] differ with respect to the burden of proof," and "differ with respect to the timing of the adverse

action." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). Despite nominally recognizing the differences between these theories of recovery, Plaintiff's briefing continually conflates the two. Moreover, while she only pled an interference claim in her complaint, her arguments on appeal are all based on the elements of retaliation, rather than interference. In response to Defendants' argument that she waived any claim of retaliation in the proceedings below, Plaintiff argues she did not need to cite to § 2615(a)(2) or use the word "retaliation" in order to raise a claim of retaliation under the FMLA. She contends her allegations regarding the county's allegedly pretextual reasons for terminating her "were sufficient to state a claim for violation of [Plaintiff's] FMLA rights, by terminating her as a result of her use of FMLA leave, whether the claim is characterized as a 'retaliation claim' or an 'interference claim.'" (Appellant's Reply Br. at 5-6 (footnotes omitted).)

We agree with Defendants that Plaintiff has waived any claim of FMLA retaliation through her actions in the proceedings below. First, Plaintiff's complaint included only a theory of interference. Plaintiff's FMLA claim was captioned "Violation of the FMLA – Interference with FMLA Rights," and the language of her allegations tracked the language of § 2615(a)(1) in alleging the county "interfered with, restrained, and/or denied Plaintiff's FMLA rights to medical leave and to reinstatement following the leave when it terminated Plaintiff's employment." (Appellant's App. at 26.)[2] Nothing in the complaint

---

[2] *Cf.* § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this

suggested she intended to bring a claim of retaliation instead of or in addition to her claim of interference. Second, Plaintiff did not dispute Defendants' assertion in their motion for summary judgment that Plaintiff had raised only a claim of FMLA interference, not FMLA retaliation. Similarly, when the district court characterized Plaintiff's claim as an interference claim during a summary judgment hearing, Plaintiff did not object to this characterization or argue she had pled a retaliation claim as well. Based on all of these facts, we reject Plaintiff's belated attempt to assert a claim of retaliation on appeal. Plaintiff waived any claim of retaliation by failing to plead such a claim in her complaint and by failing to object when both opposing counsel and the district court characterized her FMLA claim as relying solely on an interference theory.

We accordingly consider Plaintiff's FMLA claim only as an interference claim. Because of her conflation of the two theories, Plaintiff's briefing on appeal addresses only the elements of retaliation, not interference. However, the elements of these theories are sufficiently similar that we can easily extrapolate her arguments into the interference context. We therefore consider, under the appropriate standards for an interference theory, whether the district court erred in granting summary judgment in favor of the county on Plaintiff's FMLA claim.

To establish a claim of FMLA interference under § 2615(a)(1), an employee must show "(1) that she was entitled to FMLA leave, (2) that some adverse action by the

---

subchapter.")

employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell*, 478 F.3d at 1287 (internal quotation marks and brackets omitted). To satisfy the second element of an interference claim—adverse action interfering with the right to take FMLA leave—"the employee must show that she was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id.* Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave. *Id.*[3]

If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not "related to the exercise or attempted exercise of [the employee's] FMLA rights." *Id.* In meeting this burden, the employer is not required to show that the adverse employment decision and the employee's FMLA request are completely and entirely unrelated. While "related" may be defined in a broad sense as simply "connected" or "associated" in some way, *see Webster's II New College Dictionary* 935 (1995), our cases have clarified that an "indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery," *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877-78 (10th

---

[3] "In contrast, a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Id.*

-10-

Cir. 2004) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002)). For instance, if an employee's work-performance problems are related to the same illness that gave rise to FMLA leave, the employee may still be terminated based on his work-performance problems, regardless of the indirect causal link between the FMLA leave and the adverse decision. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir. 2002); *see also Smith*, 298 F.3d at 961. Likewise, if an employer presents evidence that an employee was dismissed for her failure to comply with the employer's absence-notification policy, this is sufficient to demonstrate the termination was not legally "related to" the exercise of FMLA leave, even if the employee's absences were caused by a requested medical leave. *Bones*, 366 F.3d at 878. "[The employee's] request for an FMLA leave does not shelter her from the obligation, which is the same as that of any other . . . employee, to comply with [the employer's] employment policies, including its absence policy." *Id.*

In this case, the first element of interference is not at issue—Defendants do not dispute for purposes of summary judgment that Plaintiff was entitled to FMLA leave. As for the second element of interference, it appears Plaintiff was still on FMLA leave until she was suspended with pay in August 2009 prior to her termination in September 2009. Although she had returned to work on July 13, 2009, the facts in the record indicate she was only working two hours per day, two days per week, in accordance with the work restrictions imposed by the Utah County spine specialist. While Plaintiff was working on this limited schedule, her absences were apparently covered by her FMLA leave, since

-11-

she had already exhausted her available sick leave and personal leave. Thus, although the evidence in the record is not entirely clear, we assume for purposes of this decision that the county took an adverse action which interfered with Plaintiff's FMLA rights by suspending and then terminating Plaintiff from her position while she was apparently still on partial FMLA leave.

We turn then to the third element of interference—whether Plaintiff's termination "was related to the exercise or attempted exercise of her FMLA rights." *Campbell*, 478 F.3d at 1287 (brackets omitted). Plaintiff contends the evidence in the record, taken in the light most favorable to her, supports an inference that her termination was related to her FMLA leave. She argues the county's five stated reasons for her discharge did not actually warrant termination, and she contends these stated reasons instead suggest she was fired based on her decision to take FMLA leave. For instance, she contends the county's first stated reason for her termination—her untimeliness in completing and submitting her FMLA forms—was obviously pretextual because she submitted the forms in time to satisfy the only actual deadline given to her by the county. As for the county's explanation that it was firing her in part for her abuse of sick leave and "significant evidence of untruthfulness," she argues her supervisor erred in crediting the hearsay statements of other county employees over the information provided by Plaintiff and her health-care providers. She argues her supervisor's credibility assessments were flawed because, among other things, the supervisor "did not realize that two of the witnesses reported [Plaintiff] doing things they thought were inconsistent with her injuries *before*

-12-

she was ever injured," which the supervisor later "admitted . . . was a mistake." (Appellant's Opening Br. at 22.) Plaintiff then notes that four of the five reasons the county gave for her termination were connected in some way to her injury and FMLA request, and she contends a jury could accordingly conclude her termination was related to her use of FMLA leave.

We agree with the district court that Plaintiff's interference claim fails as a matter of law because the county successfully established that Plaintiff would have been dismissed regardless of her request for an FMLA leave. Several of Plaintiff's arguments simply take issue with the county's decision that her conduct warranted termination. However, "[o]ur role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1233 (10th Cir. 2000) (internal quotation marks omitted). Thus, contrary to Plaintiff's arguments, the dispute in the record as to the actual extent of Plaintiff's injuries is immaterial to our review of Plaintiff's FMLA claim. What is important is not the absolute truth regarding Plaintiff's state of health, but rather whether the county terminated her because it sincerely, even if mistakenly, believed she had abused her sick leave and demonstrated significant evidence of untruthfulness. And on this record, there is no evidence to suggest the county fabricated these or any of the other reasons given for Plaintiff's termination in order to justify an attempt to interfere

with Plaintiff's FMLA leave.[4]

While there is an indirect causal link between Plaintiff's FMLA leave and her termination, this indirect link is insufficient to support a theory of interference. For instance, the evidence in the record demonstrates the county believed Plaintiff acted insubordinately by choosing to submit her FMLA forms at almost the literal last minute, more than seven weeks after the county made its first request for these forms to be submitted as soon as possible and after several reminders that the county was still waiting for the forms. Since these were forms for FMLA leave, there is an indirect causal link between Plaintiff's exercise of FMLA leave and the ultimate termination decision. However, this does not prove her termination was "related to" her exercise of FMLA leave as that term is defined by our precedents. The undisputed evidence in the record indicates that the county was concerned with Plaintiff's failure to comply with her supervisor's direction to submit necessary paperwork as soon as possible, not with the fact that this paperwork included a request for FMLA leave. Because the evidence indicates the county would have made the same adverse decision for the same type of conduct outside of the FMLA context, the county has met its burden of showing that

---

[4] Quoting a portion of her supervisor's deposition testimony out of context, Plaintiff contends this testimony suggested an inconsistency as to whether Plaintiff was actually fired for dishonesty. However, when viewed in context, nothing about this testimony is inconsistent with the other uncontested evidence in the record that Plaintiff's supervisor decided to discharge Plaintiff based in part on the conclusion that Plaintiff's statements regarding the extent of her injuries were less credible than the other county employees' statements regarding the physical activities she was engaging in while taking FMLA leave.

-14-

Plaintiff's termination was not legally related to her request for FMLA leave. Likewise, the evidence in the record demonstrates that the county's second reason for the termination—Plaintiff's failure to schedule an IME to address her employer's concerns about her entitlement to FMLA leave—was based on her failure to make more than a belated, half-hearted effort to comply with a direct and legitimate order from her supervisors. Again, the indirect causal link between Plaintiff's FMLA leave and this reason for her termination is insufficient to support an FMLA interference claim. Like any other county employee, Plaintiff was required to comply with legitimate directions given by her supervisors, and her request for FMLA leave did not shelter her from this obligation, even when her supervisors' instructions were related in some way to her use of FMLA leave. *See Bones*, 366 F.3d at 878.

Based on all of the evidence in the record, we conclude that the evidence, even taken in the light most favorable to Plaintiff, is sufficient to meet the county's burden of establishing that Plaintiff would have been dismissed regardless of her request for FMLA leave. Plaintiff's interference claim therefore fails as a matter of law.

The district court's summary judgment decision is **AFFIRMED**.