**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 13, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHERYL GABRIEL,

      Plaintiff - Appellant,

v.

COLORADO MOUNTAIN MEDICAL,
P.C.; DR. BROOKS BOCK,

      Defendants - Appellees.

No. 15-1004
(D.C. No. 1:13-CV-02261-REB-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **McHUGH**, Circuit Judges.
_____

Cheryl Gabriel appeals the district court's entry of summary judgment in favor

of her former employer, Colorado Mountain Medical, P.C. (CMM) and its CEO

Dr. Brooks Bock, on her claim that CMM violated her rights under the Family

Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Viewing the facts in the light most favorable to Ms. Gabriel, *see Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1224 (10th Cir. 2012), the record establishes the following:

Beginning in 2007, CMM employed Ms. Gabriel as a clinical assistant. In 2010, Ms. Gabriel took on a second, part-time job with a local ambulance company, which sometimes required her to work a 24-hour shift immediately before reporting to work at CMM. There were no documented performance issues at CMM related to her ambulance job until she began suffering anxiety attacks in 2012. Between October 31 and December 17, 2012, Ms. Gabriel had anxiety attacks at work that required her to take unplanned breaks several times per week. Her coworkers covered for her, but were concerned for patient safety. As a result of the anxiety attacks, Ms. Gabriel took two weeks of FMLA leave in late December 2012.

Ms. Gabriel returned to work at CMM part-time from December 29, 2012, until January 8, 2013, and then she increased to a full-time schedule. Ms. Gabriel also continued to work for the ambulance company and sometimes worked 24-hour shifts immediately before reporting to her CMM job. She again suffered anxiety attacks, and on one occasion, Ms. Gabriel phoned her CMM supervisor while suicidal. Ms. Gabriel also reported to other CMM employees that she had acquired a gun.

On February 7, 2013, Ms. Gabriel met with Dr. Bock and other CMM personnel to discuss her job performance and mental-health issues. As memorialized

in a memorandum dated that day, CMM informed Ms. Gabriel that her work performance was unsatisfactory for the following reasons:

> Her demeanor and appearance are frequently unprofessional, she often times appears to be tired, is forgetful, at times can be easily distracted and frequently requires other clinical staff to complete her duties. It is the company's understanding that C Gabriel has a second job with an ambulance company and she reports many days of continued work and on occasion has reported that prior to coming to work for CMM she has just worked a 24 hour shift for the ambulance company. . . . [I]t is the expectation of CMM that she present to her work assignments after adequate periods of rest and that she will likely need to modify her schedule with the ambulance company.

Aplt. App. at 83. The memorandum further noted Ms. Gabriel's negative attitude and the concerns of other employees that she had acquired a gun. CMM directed her to take more FMLA leave and informed her that she might not be reinstated, noting that the decision whether to reinstate "will be entirely in the hands of CMM management personnel." *Id.*

Ms. Gabriel took FMLA leave as directed by CMM. Before returning to work, she submitted a fitness-for-duty certification from her psychiatrist stating that she could return to work on March 21, 2013. On March 19, 2013, Ms. Gabriel again met with Dr. Bock and CMM personnel. CMM understood that Ms. Gabriel intended to continue working at the ambulance job, including 24-hour shifts, although Ms. Gabriel contends she was merely negotiating about her schedule at the ambulance job. After the meeting, CMM terminated Ms. Gabriel's employment for the reasons stated in the February 7 memo: documented performance deficiencies, her refusal to stop working 24-hour shifts at the ambulance company immediately

3

before reporting for work at CMM, and other employees' concerns that she had acquired a gun.

Ms. Gabriel filed suit under an FMLA interference theory, *see* 29 U.S.C. § 2615(a)(1), because CMM refused to reinstate her to her prior position after her FMLA leave.[1] CMM moved for summary judgment. The district court initially denied the motion, but on reconsideration granted summary judgment in favor of CMM. Ms. Gabriel appeals, arguing that CMM's failure to restore her to her prior position in spite of her psychiatrist's fitness-for-duty certification violated the FMLA.

## II. Analysis

"We review the district court's grant of summary judgment on the FMLA claim de novo, applying the same legal standard used by the district court." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1107 (10th Cir. 2002). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The FMLA "provides that eligible employees of certain employers have the right to take unpaid medical leave for a period of up to twelve work weeks in any twelve month period for a serious health condition as defined by the Act." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 959 (10th Cir. 2002);

---

[1] Ms. Gabriel brought additional claims that were dismissed by stipulation of the parties.

*see generally* 29 U.S.C. § 2612.  Under the FMLA, an employee is entitled to reinstatement to her previous position upon her return from leave.  Section 2614(a)(1) states:  "[A]ny eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave . . . to be restored by the employer to the position of employment held by the employee when the leave commenced."  29 U.S.C. § 2614(a)(1).

"[A]n interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave."  *Dalpiaz v. Carbon Cty.*, 760 F.3d 1126, 1132 (10th Cir. 2014).  To establish an interference claim, "an employee must show that (1) [she] was entitled to FMLA leave, (2) an adverse action by [her] employer interfered with [her] right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights."  *Brown*, 700 F.3d at 1226.  "Even if [the employee] shows these elements, the [employer] will still prevail if it shows that [the employee] would have been dismissed regardless of [her] request for, or taking of, FMLA leave."  *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012) (internal quotation marks omitted).  The parties agree that the only disputed issue is whether CMM's decision to discharge Ms. Gabriel was related to her taking FMLA leave.

Ms. Gabriel contends that because CMM knew about her job-performance problems before she went on FMLA leave, CMM is foreclosed from claiming her discharge was not related to her taking leave.  She relies on *McBride* to argue that

5

past work-related problems may justify refusing to restore the employee to her prior position only if the employer was unaware of the problems before the employee went on leave. *See McBride*, 281 F.3d at 1102 (noting that during the employee's FMLA leave, her supervisor "discovered several problems with Ms. McBride's job performance of which he was not previously aware"). But *McBride*'s affirmance of the summary judgment granted to the employer did not turn on the fact that the employee's job-performance deficiencies were discovered during her FMLA leave. *See id.* at 1108 (rejecting plaintiff's argument that she was not reinstated due to performance problems caused by her illness and was not given an opportunity to show improved job performance when she was not ill). And in other cases we have affirmed judgments in the employer's favor where the employee's unsatisfactory job performance was discovered before the employee went on FMLA leave or where the employee's actions during FMLA leave warranted dismissal. *See, e.g., Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 732 (10th Cir. 2000) (employee was fired during his FMLA leave because he had gone to work drunk before taking leave); *Dalpiaz*, 760 F.3d at 1130 (employee was fired while on FMLA leave for, among other things, failing to comply with her employer's requirements for documenting FMLA leave); *Sabourin*, 676 F.3d at 961 (employee was fired "for his disloyal and obstructive conduct *while on* FMLA leave"). Moreover, even if "an employee's work-performance problems are related to the same illness that gave rise to FMLA leave, the employee may still be terminated based on [her] work-performance problems, regardless of the indirect causal link between the FMLA leave and the

6

adverse decision." *Dalpiaz*, 760 F.3d at 1132. Therefore, the fact that CMM knew of Ms. Gabriel's job-performance problems before she went on FMLA leave is not determinative of whether her discharge was due to her exercise of FMLA leave.

Ms. Gabriel also contends that CMM violated the FMLA by refusing to reinstate her despite her psychiatrist's fitness-for-duty certification. She characterizes CMM's position as substituting its opinion on whether her mental condition was cured for that of her psychiatrist. The issue, however, is not whether Ms. Gabriel was mentally fit for work, but instead whether CMM's decision to terminate her employment was based on her taking FMLA leave. Even if Ms. Gabriel had recovered from her mental-health problems, the FMLA does not prohibit CMM from terminating her for the work deficiencies that resulted from those problems. "[T]he FMLA does not protect an employee from performance problems caused by the condition for which FMLA leave is taken, nor does it require that an employee be given an opportunity to show improved job performance when not ill." *McBride*, 281 F.3d at 1108.

Ms. Gabriel further argues that the FMLA's requirement that she be restored to her former job required CMM to allow her to continue working at her ambulance job. She contends that if doing so later became a problem, CMM could then require her to adjust her schedule. "However, our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Dalpiaz*, 760 F.3d at 1133 (brackets and internal quotation marks omitted). The inquiry, therefore, is not whether the ambulance job interfered with

7

her work at CMM, but "whether [CMM] terminated her because it sincerely, even if mistakenly, believed [her work performance at CMM suffered because of her ambulance job]." *Id.* at 1134.

The record shows that CMM's reasons for terminating Ms. Gabriel's employment, as set forth in the February 7, 2013, memo, were poor job performance, a negative attitude, reporting for duty after working a 24-hour shift at her ambulance job, and other employees' concerns that she had acquired a gun. "[A]n employee who requests FMLA leave [has] no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Renaud*, 203 F.3d at 732 (internal quotation marks omitted). "[N]o evidence suggests that the stated reasons for termination (which do not include [taking FMLA leave]) were not the real ones," *Brown*, 700 F.3d at 1228, or that CMM "fabricated [the] reasons given for [Ms. Gabriel's] termination in order to justify an attempt to interfere with [her] FMLA leave," *Dalpiaz*, 760 F.3d at 1134. Although Ms. Gabriel argues the real reasons for her termination can only be decided by a jury, we agree with the district court that no reasonable juror could find Ms. Gabriel's termination was related to her request for FMLA leave. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1009 (10th Cir. 2011) (discussing employee's failure to come forward with evidence to contradict the employer's reasons for terminating her, concluding that "no reasonable juror could deduce from the . . . evidence that Twigg's termination was related to her request for

an FMLA leave" (brackets and internal quotation marks omitted)). Therefore, Ms. Gabriel's interference claim fails as a matter of law.

Ms. Gabriel's overarching argument is that an employer violates the FMLA if it does not reinstate the employee, no matter what the reason. *See, e.g.*, Aplt. Opening Br. at 31. But the FMLA does not impose strict liability. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) ("Section 2615(1)(1) is . . . not a strict liability statute."); 29 U.S.C. § 2614(a)(3)(B) ("Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). Ms. Gabriel points to no evidence suggesting that CMM's decision to terminate her employment was based on her FMLA leave. This circumstance "breaks [her] alleged causal chain." *Metzler*, 464 F.3d at 1181. Summary judgment in CMM's favor was therefore appropriate.

## III.  Conclusion

The district court's judgment is affirmed.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

9