**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 24, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANGELA SIMON,

    Plaintiff - Appellant,

v.

CITY AND COUNTY OF DENVER,

    Defendant - Appellee.

No. 18-1310
(D.C. No. 1:16-CV-03116-RPM)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HARTZ**, Circuit Judges.
_____

Angela Simon appeals from the district court's grant of summary judgment to

her former employer, the City and County of Denver, on her claims under the Family

and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1) and (a)(2). Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

    * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

Simon was a Denver police officer, working the overnight shift from 7 p.m. to 7 a.m. In May 2014, she learned her sister would be getting married in the Azores Islands, Portugal, on June 7, 2014. Her disabled mother, who lived in Illinois and needed assistance, wanted to travel to the wedding. Simon sought leave from June 1-14 to travel with her mother. Her commander, Antonio Lopez, approved her to be out from June 3-14. But Simon says she heard her lieutenant, Kevin Edling, tell her that she was approved to be out from June 1-13.

The plan was that Simon's mother would travel from Chicago to Boston, where Simon would meet her, and the two then would travel to the Azores together. On the morning of May 12, Simon bought plane tickets from Boston to the Azores for the evening of June 1. Later on May 12, Edling made it clear to her that she was expected to be at work on June 1 and 2. That night, she had conversations with her sergeant, Craig Scott, regarding her leave. At the end of the overnight shift (the morning of May 13), Scott entered her time off as June 1-13 in the department's electronic leave-tracking system, TeleStaff.

Simon did not change her tickets, even after Edling informed her on May 12 that she did not have leave for June 1 and 2. Nor did she tell him that she already had bought her trans-Atlantic tickets. But on the evening of May 13, she did mention her mother's difficulties to him. He suggested she could look into taking FMLA leave. On May 14, Simon inquired about FMLA with the Human Resources (HR) department, and on May 18, she applied for FMLA leave to care for her mother from

2

June 1-17. Her application was complete except for a required certification from her mother's doctor. HR told her she was eligible for FMLA leave and it could be applied retroactively, if it were to be approved once the application was complete.

In the meantime, on May 17, a lieutenant in charge of night-shift staffing levels sought confirmation that she would be out from June 1-13. Even though Edling had told her that her leave would not start until June 3, Simon did not correct the lieutenant or inquire about the discrepancy. On May 22, she bought a plane ticket for Denver to Boston, leaving in the early afternoon of June 1.

On May 28, Edling and Lopez became aware that TeleStaff still showed Simon being out on leave on June 1 and 2. They met with Simon on May 29. Lopez directly ordered her to be at work on June 1 and 2. Simon refused, stating that her family came first. But she did not tell Lopez or Edling that she had applied for FMLA leave to care for her mother, and apparently Lopez did not understand that her mother was disabled.

On Saturday, May 31, the doctor faxed the required certification to HR. Simon learned of the transmittal on the morning of Sunday, June 1, and she left for Boston on the flight she had previously booked. She called in from Boston just before her scheduled shift that evening, telling the sergeant on duty that she was taking FMLA leave.

On Monday, June 2, Lopez filed a complaint against Simon with the Internal Affairs Bureau (IAB) for disobeying a direct order and for feigning an illness to obtain FMLA leave (apparently he erroneously thought Simon was invoking FMLA

3

leave for her own medical needs). HR approved Simon's FMLA leave on June 4. Lopez informed IAB of the approval of the FMLA leave.

After IAB investigated the complaint, Commander Michael H. Battista, acting on behalf of the Chief of Police, prepared a disciplinary recommendation (Written Command). Battista stated that "it appears [HR] indicated Officer Simon would be approved for FMLA leave, [and] could use it retroactively, and Officer Simon reasonably relied upon [that] guidance." Aplt. App., Vol. II at 10. Given that HR approved the FMLA leave, "issues and questions related to Officer Simon's FMLA [leave] are neither germane nor probative to her alleged misconduct." *Id.* Instead, Battista concluded that she violated three departmental rules: RR-112.1 (Misleading or Inaccurate Statements), RR-112.2 (Commission of a Deceptive Act) and RR-105 (Conduct Prejudicial).

RR-112.1 states, "Officers shall not knowingly make a misleading or inaccurate statement relating to their official duties." *Id.* at 103. Battista concluded that Simon misled her command staff concerning her approved leave dates. He credited the accounts of other witnesses, including Scott, indicating that she represented she had leave for June 1 and 2 and that she did not correct that misapprehension even after it was brought to her attention. Battista recommended the presumptive penalty of 10 days' suspension for violating RR-112.1.

RR-112.2 states, "In connection with any investigation or any judicial or administrative proceeding, officers shall not commit a materially deceptive act." *Id.* Battista concluded that Simon violated RR-112.2 by making "multiple materially

4

deceptive statements during the course of [the] IAB investigation." *Id.* at 12. He

found that "considered together," her statements during the IAB investigation

revealed "a clear pattern of deceptive conduct." *Id.* at 12-13. "Several of

Officer Simon's statements to IAB and her portrayal of events are directly

contradicted by the statements of her supervisors, contradict one another, or are

inconsistent with the facts of the case." *Id.* at 13. He recommended the presumptive

penalty, termination of employment, for violating RR-112.2.

Finally, RR-105 provides,

Officers shall not engage in conduct prejudicial to the good order and police discipline of the Department or conduct unbecoming an officer which:

(a) May or may not specifically be set forth in Department rules and regulations or the Operations Manual; or

(b) Causes harm greater than would reasonably be expected to result, regardless of whether the misconduct is specifically set forth in Department rules and regulations or the Operations Manual.

*Id.* at 102. Battista concluded that Simon violated RR-105 "when she manipulated

her chain of command in order to obtain her desired time off." *Id.* at 16. He found

that Simon "fail[ed] to be forthcoming and omitt[ed] information" in dealing with

command staff. *Id.* Battista recommended the presumptive penalty, termination of

employment, for violating RR-105.

The City entrusted the final disciplinary decision to the Deputy Director of

Safety, Jess Vigil. In a written Departmental Order of Disciplinary Action

(Departmental Order), Vigil found that Simon had violated the three department rules

identified in the Written Command. Regarding RR-112.1, Vigil determined that

5

Simon made misleading statements to her supervisors about the dates of her approved leave, failed to inform her supervisors about pertinent information, and failed to set the record straight when she had the opportunity to do so. Regarding RR-112.2, Vigil determined that Simon "made multiple materially deceptive statements during the course of the IAB investigation," and when those statements were "considered together, a clear pattern of deceptive conduct emerges." *Id.* at 31. In reaching this conclusion, he found the statements of other witnesses, including Edling and Scott, more credible than Simon's statements. And regarding RR-105, Vigil concluded that "Officer Simon would not accept [the] decision [to allow her June 3-14 off] and engaged in inappropriate and unprofessional behavior which undermined the authority of her command." *Id.* at 37. He found that she was untruthful to her superiors and that she misled command staff and HR by not fully and completely informing them as to pertinent details. Vigil imposed 30 days' suspension for the violation of RR-112.1 and terminated Simon's employment for the violations of RR-112.2 and RR-105.

Simon brought two FMLA claims, one that the City interfered with her right to take FMLA leave, in violation of 29 U.S.C. § 2615(a)(1), and one that it retaliated against her for taking FMLA leave, in violation of § 2615(a)(2). In granting the City's motion for summary judgment on both claims, the district court held that "[t]he record presented does not support a possible finding that the termination of plaintiff's employment as a [Denver] police officer was related to her FMLA leave. In short Simon was fired for dishonesty." Aplt. App., Vol. III at 77.

6

## DISCUSSION

"We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 968 (10th Cir. 2017) (internal quotation marks omitted). "Summary judgment shall be granted if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). Simon's opening brief addresses only her retaliation claim. She therefore has waived any challenge to the grant of summary judgment on her interference claim. *See Gonzales v. City of Albuquerque*, 701 F.3d 1267, 1273 (10th Cir. 2012).

Simon invokes the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (holding that FMLA retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis). Under this framework,

> the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.

*Id.* (citations omitted).

For purposes of this appeal, we assume that Simon satisfied her burden of establishing a prima facie case of retaliation. The City offered a legitimate, non-retaliatory reason for terminating Simon's employment—Vigil's determination

7

that she violated departmental regulations RR-112.2 and RR-105.  The question therefore is whether Simon satisfied her burden of demonstrating a genuine dispute of material fact as to whether the City's proffered reason is pretextual.  *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1229 (10th Cir. 2012).

"A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *DePaula*, 859 F.3d at 970 (internal quotation marks omitted).  "The employee can show pretext by a variety of evidence; no one type of evidence is required." *Brown*, 700 F.3d at 1229.  Demonstrating pretext "is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *DePaula*, 859 F.3d at 970 (internal quotation marks omitted).  The employee "may also show pretext by demonstrating the [employer] acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the [employee]." *Id.* (internal quotation marks omitted).

Simon cites several findings in the Departmental Order as evidence of pretext. The City argues that she forfeited all but one of these arguments by failing to make them in the district court, where her pretext argument focused on the adequacy of the investigation.  Simon replies that she adequately preserved her arguments for appeal, but in the alternative she argues for plain-error review.  We agree with the City that

8

Simon forfeited most of her pretext arguments. *See id.* at 976; *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128, 1130 (10th Cir. 2011). Generally we would review her forfeited arguments only for plain error, which would require her to show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *See Richison*, 634 F.3d at 1128. We need not weigh the proper standard of review for each of her arguments separately, however, because she fails to show error under even the more favorable standard, de novo review.

Simon argues that (1) some of the statements in the Departmental Order were discredited by evidence and later admissions, and (2) other statements were suspect because they involved Simon's own belief and intent, which Vigil was not in a position to determine, and on Vigil's inaccurate evaluation of witnesses' credibility. We must keep in mind, however, "our role is to prevent unlawful [employment] practices, not to act as a super personnel department that second guesses employers' business judgments." *Dalpiaz v. Carbon Cty.*, 760 F.3d 1126, 1133 (10th Cir. 2014) (brackets and internal quotation marks omitted). "[W]e examine the facts as they appear to the person making the decision," *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (internal quotation marks omitted), and we do not judge "whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs," *id.* at 924-25 (brackets and internal quotation marks omitted). "Evidence that the employer should not have made the termination decision—for example, that the employer was

9

mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *DePaula*, 859 F.3d at 970-71 (internal quotation marks omitted). "What is important is . . . whether the [employer] terminated [the employee] because it sincerely, even if mistakenly, believed [in the proffered rationale]." *Dalpiaz*, 760 F.3d at 1134.

Simon's issues fall into the realm of business judgments and evaluations. While some of Vigil's findings ultimately may not have been correct, any inaccuracies are insufficient to show that he did not honestly believe the statements he made at the time he made them. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007). Even in light of Vigil's claimed errors or misjudgments, the record would not allow a reasonable factfinder to conclude that Vigil's stated rationales for terminating Simon's employment were pretext for FMLA retaliation. Simon therefore has failed to show that the district court erred.

Simon also posits that it was illogical for Vigil to conclude that she attempted to manipulate her command staff, when she did not do the one thing Lopez said would have convinced him to grant her entire requested leave—that is, to directly inform him that her mother was disabled and Simon was requesting FMLA leave to care for her. This argument also falls into the realm of requesting that we second-guess the City's business judgment. Vigil's evaluation of the evidence does not create a genuine issue of material fact as to pretext. Accordingly, this argument also fails to establish that the district court erred.

10

**CONCLUSION**

The district court's judgment is affirmed.

Entered for the Court


Bobby R. Baldock
Circuit Judge